IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK JACOBS,<br>              **Plaintiff,**<br><br>v.<br><br>**ALEJANDRO MAYORKAS, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY,**<br>              **Defendant.** | CIVIL ACTION<br><br><br><br>NO.  21-0165 |

## MEMORANDUM OPINION

Plaintiff Jack Jacobs, a Customs and Border Protection (CBP) employee, alleges that the U.S. Department of Homeland Security ("Defendant") discriminated against him based on his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*, when it failed to select him as a Watch Commander at the Port of Philadelphia in September 2019.  Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, the Motion will be granted.

**I.**  **FACTUAL BACKGROUND**

Jack Jacobs is an African American employee of Customs and Border Protection, where he has worked since 2006.  He has climbed the proverbial ladder at CBP, earning several promotions, participating in specialized training, and receiving positive performance reviews, as well as multiple letters of commendation for his performance.  He sought out advancement opportunities, including serving as the Acting Chief of Staff at the Port of Philadelphia in 2017 and in the Immigration Advisory Program in London in 2018.  Jacobs also has a Master of Science in Criminal Justice with a specialization in Homeland Security.  In 2018, Jacobs was a First Line Supervisor Port of Philadelphia, a position at the third-highest level (GS-13).  But

1

Jacobs had his mind set on a position a level above that role: Watch Commander (GS-14).

Defendant advertised an opening for a Watch Commander role in Philadelphia in May 2018.  Jacobs applied, but the position was closed in June without a selection being made.  Defendant posted the role a second time in December 2018, Jacobs applied again, but once more Defendant closed the position without selecting anyone.  Meanwhile, Jacobs claims that Defendant was using this delay to groom its preferred candidate, Francis McCarthy.  McCarthy, a White CBP employee, received career advice and opportunities to bolster his application, including from his supervisor, Joseph Martella.  Martella was the Area Port Director for the Port of Philadelphia, as well as the recommending official for the Watch Commander position.  As the recommending official, Martella's job was to review the results of the resume-rating and interview portions of the selection process, check the applicants' references, and recommend to the selecting official who should be promoted to Watch Commander.  Jacobs alleges that Martella provided preferential treatment to McCarthy so that he would succeed in the selection process.  For example, Martella encouraged McCarthy to take a role as the Acting Port Director for the Port of Pittsburgh to gain supervisory experience, selected McCarthy as the supervisor of the Tactical Terrorism Response Team, and served as a reference on McCarthy's resume.  Jacobs, on the other hand, was not offered the same career-enhancing opportunities despite his qualifications.  To the contrary, Jacobs claims he was denied the opportunity to participate in a June 2019 drug seizure operation at a seaport near his post at the airport, notwithstanding his uniquely applicable training.

Finally, Defendant posted the Watch Commander role a third time in May 2019 and proceeded to an official selection process.  Jacobs applied, was deemed eligible, and participated in CBP's three-stage merits based selection process, the method and results of which are detailed

*infra*. For now, suffice it to say that Jacobs, the fourth ranking candidate, was not selected. Instead, Defendant promoted McCarthy—the first ranking candidate after the standardized selection process. Jacobs claims that this decision was based on impermissible race discrimination, in violation of Title VII.

## II.     SUMMARY JUDGMENT STANDARD

"[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (internal quotations marks and citations omitted). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of [the] burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). A factual dispute is material, and therefore must be resolved by the jury, only where it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations marks and alterations omitted). However, the non-moving party cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. *Anderson*, 477 U.S. at 248-49; *see also Berckeley Inv. Group. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").

### III. DISCUSSION

Jacobs brings a claim for racial discrimination in violation of Title VII, which prohibits employers from discriminating against employees on the basis of, *inter alia*, race. 42 U.S.C. § 2000e-2(a)(1). Where, as here, the claim does not rest on direct evidence of discrimination, it is analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the first step of this framework, the employee bears the initial burden of establishing a *prima facie* case of race discrimination by a preponderance of the evidence. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). In the second step, if the employee makes out a *prima facie* case, "the burden of production [then] shifts to the defendant to offer a legitimate non-discriminatory [reason] for the adverse employment action." *Id.* at 426 (internal quotation marks and citation omitted). In the third and final step, "the burden of production [shifts] back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Id.* Defendant challenges Jacobs's case at each step of the way.

### A. Jacobs's *Prima facie* Case for Race Discrimination

Defendant's first challenge is to Jacobs's *prima facie* case for race discrimination. "The existence of a *prima facie* case of employment discrimination is a question of law that must be decided by the Court." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). To make a showing of race discrimination under Title VII, a plaintiff must show that: (1) he belongs a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and, (4) members outside his protected class were treated more favorably or the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination. *See, e.g., Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008);

4

*Burton*, 707 F.3d at 426.  As the Supreme Court made clear in elucidating the *McDonnell Douglas* framework, the precise elements of a *prima facie* case may vary under the circumstances of each case.  *See McDonnell*, 411 U.S. at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the specification [] of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.").

Defendant challenges only the final element of Jacobs's *prima facie* case, arguing that Jacobs fails to raise an inference of discrimination because McCarthy is not similarly situated to Jacobs and thus not a proper comparator.  But Defendant applies too exacting a standard at the *prima facie* stage.  While showing that a similarly-situated comparator was treated more favorably than the plaintiff is one way to make out a *prima facie* case, it is not the exclusive manner of doing so.  *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268-69 (3d Cir. 2010) ("Although comparative evidence is often highly probative of discrimination, it is not an essential element of a plaintiff's case.").  Rather, the "central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race. . . ."  *Sarullo*, 352 F.3d at 798 (internal quotation marks and citations omitted).  A variety of evidence may permit an inference of discrimination sufficient to establish a *prima facie* case. *See Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (explaining that the *McDonnell Douglas* framework "was never intended to be rigid, mechanized, or ritualistic.  Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.").

Jacobs clears the *prima facie* hurdle.  He contends that the evidence shows that a White candidate was given preferential treatment by a White decision-maker leading up to the selection process, and that the selection process was manipulated so that this candidate would be selected.

Moreover, he argues that this was done to maintain the racial hierarchy at the Port of Philadelphia, where the highest-level positions are held predominantly by White employees. Defendant's arguments regarding the comparative qualifications of Jacobs and McCarthy, and the alleged weakness of Jacobs's evidence of racial motivation, are properly addressed down the line in the pretext analysis. *See Ezold v. Wolf*, 983 F.2d 509, 523 (3d Cir. 1993) ("Because the *prima facie* case is easily made out, it is rarely the focus of the ultimate disagreement.") (internal citation omitted).

### B. Defendant's Legitimate, Non-Discriminatory Reason for Failure to Promote Jacobs

Jacobs having made out a *prima facie* case for race discrimination, the burden of production shifts to Defendant to offer a legitimate, non-discriminatory reason for failing to promote Jacobs. "This burden is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (alteration in original) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 773 (3d Cir.1994)).

Defendant claims that McCarthy, rather than Jacobs, was selected to fill the Watch Commander position based on a non-discriminatory, merits based selection process. As the selection process is likewise relevant to the pretext analysis, it merits elaboration. CBP's standard, uniform selection process to select a Watch Commander proceeded in three parts. First, a panel of three people reviewed and rated candidates' resumes, including those of Jacobs and McCarthy. The resume review panel—consisting of a White woman, an African American man, and a White man—rated candidates' resumes from one to five on five standard factors: technical credibility, supervisory experience, leading change, human capital management, and

6

building coalitions. The resume scoring sheet included a description of each competency. Jacobs's cumulative resume review panel score was 53, whereas McCarthy's cumulative score was 68. None of the three reviewers rated Jacobs's resume higher than McCarthy's. Nor were any of the reviewers familiar with Jacobs's race at the time of review. After resume review, McCarthy was tied for the first-place ranking, and Jacobs was tied for 22nd place.

Next, both McCarthy and Jacobs were interviewed by a three-person panel. The interview panel—consisting of an African American woman, a Hispanic man, and a White woman—used a structured interview rating form and written instruction sheet to conduct standardized interviews. The panelists rated candidates on a scale of one to five on each of four required questions. Jacobs cumulative interview score, out of total possible score of 60, was 34. McCarthy's cumulative interview score was 49. None of the three interviewers rated Jacobs higher than McCarthy.

At the third stage of the selection process, the candidates' combined resume and interview scores were sent to the recommending official, Joseph Martella. Martella's role was to review the results, along with any other relevant documentation, check candidates' references, and make a recommendation to the selecting official. Jacobs's cumulative score was 87, and his final ranking was fourth out of seven candidates. McCarthy's cumulative score was 117, and his final ranking was first. In a memorandum to the selecting official, Martella recommended McCarthy for the Watch Commander position. The memorandum explains that McCarthy was the top-rated candidate overall, states that his reference checks bolster the recommendation, and outlines how McCarthy's credentials and experience at CBP qualify him for the role. The selecting official reviewed Martella's recommendation and chose McCarthy for the Watch Commander position.

Defendant's undisputed evidence that McCarthy was the top-rated candidate, whereas Jacobs was fourth, following a regimented, multi-step selection process meets the burden of demonstrating a legitimate, non-discriminatory reason for failing to promote Jacobs. In fact, Jacobs concedes that "Defendant proffers ostensibly legitimate, non-discriminatory reasons for its non-selection of Mr. Jacobs as a Watch Commander." The bones that Jacobs has to pick with Defendant regarding the selection process—of which there are several—go towards pretext.

C. Pretext Analysis

Everything turns on the pretext analysis here. To show pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. In seeking to discredit the employer's proffered reasons, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765. This burden may be carried by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Id*. (internal quotation marks and citation omitted).

Jacobs contends that Defendant's proffered reason for selecting McCarthy as Watch Commander—namely, McCarthy's performance during CBP's standard selection process—is a pretext for discrimination for several reasons, addressed herein. The gist of Jacobs's argument is that McCarthy was given an inside track to the Watch Commander position, a track from which

8

Jacobs was excluded because he is African American.

First, Jacobs points to the fact that the Watch Commander position at issue was opened and then closed twice before the application and selection process detailed *supra*. Indeed, in June 2018 and again in December 2018, the Watch Commander position was advertised, Jacobs applied, and the position was closed without a selection being made. Jacobs's theory is that the selection process was delayed as a stalling tactic so that McCarthy, a White candidate, could eventually outperform the other candidates. Yet, Jacobs offers no competent evidence to support this theory. Jacobs did not take discovery regarding the racial make-up or qualifications of the applicant pool during the previous application cycles, or CBP's reasons for the closing the position. On the current record, it would be pure speculation to assert that CBP closed the position to ensure that a qualified White candidate, rather than Jacobs, would ultimately be selected as Watch Commander. *See Anderson*, 477 U.S. at 248 (explaining that competent evidence beyond mere allegations is needed to defeat summary judgment).

Relatedly, Jacobs alleges that McCarthy benefitted from preferential treatment in the run-up to the selection process to ensure that he was selected as a Watch Commander. Jacobs describes how Martella groomed McCarthy to be the preferred candidate, for example by encouraging him to serve as the Acting Port Director for the Port of Pittsburgh, assigning him as the supervisor of a Tactical Terrorism Response Team, and serving as a reference on McCarthy's application. In contrast, Jacobs was not offered the same career enhancing opportunities, despite his comparable or superior qualifications.[1] Missing from the record, however, is any indication

---

[1] Jacobs takes particular offense to not being asked to participate in a June 2019 drug seizure operation at the Port of Philadelphia, despite receiving uniquely applicable training. Yet, Jacobs offers no evidence from which a reasonable jury could infer, as he suggests, that Defendant intended to deny him this experience to hurt his application for Watch Commander. Jacobs testified that he does not know how many airport CBP officials (such as himself) were asked to participate in the seizure at the seaport or how these officials were selected. He concedes that he did not request or inquire whether he would be able to

that the alleged favoritism was based on race. A supervisor's mentorship and advice to an employee of one race who is interested in career advancement does not, necessarily without more, indicate racial hostility towards an employee of a different race who is not offered the same. Jacobs concedes as much, acknowledging that courts have generally found that preselection establishes only that an employee was treated unfairly, but that more is required to establish pretext. *See Wade v. McCarthy*, 2018 WL 5454149, at *8 (E.D. Pa. Oct. 29, 2018) ("Indeed, numerous courts have found that pre-selection, on its own, does not demonstrate pretext"). The burden is thus on Jacobs to offer competent evidence from which the jury could infer that Defendant excluded him from the supposed inside track because of his race. He has not done so. With no concrete evidence regarding the circumstances of the alleged inside track—Martella's motivation for mentoring McCarthy, McCarthy's qualifications for the opportunities he was offered, the basis for his selection, or whether other non-White candidates were considered and rejected—a jury cannot reasonably infer racial animus.

Next, Jacobs alleges that Defendant selectively and inconsistently credited McCarthy's Bachelor's Degree in Administration of Justice and supervisory experience, while discounting Jacobs's Master's Degree in Criminal Justice and comparable experience. The record belies this contention. It is undisputed that a Master's Degree was not a requirement for the Watch Commander role. Nor was higher education included in the five competencies considered by the resume reviewers. It is therefore not inconsistent or implausible that the resume reviewers attested that they did not consider any candidates' educational level, including Jacob's Master's Degree, in rating the resumes. That Martella's recommendation memo, at a separate stage of the selection process, includes a passing reference to McCarthy's Bachelor's Degree in detailing his

---

participate. Finally, there is no evidence that the decision-makers involved selecting participants for the June 2019 drug seizure operation were the same as those selecting the Watch Commander.

qualifications is not indicative of pretext. Martella's recommendation was not limited to the same narrow criteria as the resume review, and he was entitled to offer a more robust description to assist the selecting officer in making the final hiring decision.

Jacobs also criticizes the resume reviewers for overlooking his experience as an Acting Director at Headquarters, a position a level above that of Watch Commander on the CBP organizational chart. However, the resume raters offered race neutral explanations for their understanding of this role, evidence which Jacobs has not countered. Specifically, Jacobs's resume stated that he "was the Acting Director . . . when the director was not available." Based on that description and because the resume did not specify a time frame, the reviewers took this to mean that Jacobs merely covered for the director on occasion when he was out of the office. Accordingly, the reviewers did not consider this entry as a temporary promotion to Port Director in rating Jacobs's resume. Nothing about this explanation suggests pretext for racial discrimination.

In short, Jacobs argues that there is no plausible reason that Defendant would discount his experience and credentials and select McCarthy over him, so this allegedly improper assessment must be race discrimination. Yet, the record is replete with race-neutral explanations from the six panelists, Martella, and the selecting officer regarding their respective evaluations of Jacobs and McCarthy. Although Jacobs concedes that McCarthy also had relevant supervisory experience, including as an Acting Port Director, Jacobs contends that his training and more varied experience made him the superior candidate for the Watch Commander role. Nevertheless, what Jacobs requests is protection that Title VII does not afford: for the Court to stand in as decision-maker and determine which of two undisputedly qualified candidates was better suited for the Watch Commander role. At the pretext stage, "[t]he question is not whether

the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (internal quotation marks and citation omitted) (alteration in original); *see also Ezold*, 983 F.2d at 523 ("'[M]ore than a denial of promotion as a result of a dispute over qualifications' must be shown to prove pretext") (quoting *Molthan v. Temple Univ.*, 778 F.2d 955, 962 (3d Cir. 1985))). Where, as here, the candidates' relative qualifications are not so disparate as to permit an inference of pretext, and in the absence of any direct or indirect evidence that racial animus influenced the decision, CBP's hiring decision will not be second-guessed.

Furthermore, Jacobs offers a variety of criticisms regarding the fairness of CBP's selection process. For instance, Jacobs contends that Martella had a conflict of interest because he was a reference on McCarthy's resume, and that CBP violated its internal policy by not offering feedback to non-selected internal candidates. Again, Jacobs fails to connect his process-based complaints to any evidence of racial discrimination. Although Jacobs contends that Martella violated CBP's online ethics training—which counsels officials to avoid the appearance of a conflict of interest—Jacobs points to no specific CBP policy that prohibits an applicant from listing the recommending official as a reference on his resume. More importantly, Jacobs fails to connect this perceived ethical violation to any evidence of racial bias. Jacobs's complaint that Defendant deviated from CBP policy by failing to provide him feedback after his non-selection is even more tenuous. It is undisputed that none of the non-selected candidates were offered unsolicited feedback. *Cf. Poff v. Prudential Ins. Co. of Am.*, 911 F. Supp. 856, 861 (E.D. Pa. 1996) ("An employer's failure to follow procedure assists a plaintiff's case if such violation, in conjunction with other evidence (such as evidence showing that the policy was disparately applied), tends to show that the proffered reason is not credible." (citation omitted)). The only

candidate to receive feedback was an African American candidate who reached out and asked for it, which Jacobs did not do. In sum, Jacobs's grievances about how CBP conducted the selection process may go towards general unfairness, but do not indicate that the process was infected with racial animus.

Finally, Jacobs contends that CBP's poor treatment of other African American officials seeking promotion indicates pretext. His only evidence of this alleged poor treatment, however, is anecdotal evidence that African Americans are underrepresented in supervisory roles at the Port of Philadelphia. For instance, Jacobs contends that six of the seven highest positions at the Port of Philadelphia are held by White men and only one by an African American man. While racial demographics can, in some instances, support an inference of racial discrimination, context is key. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339-40 (1977) (explaining that while statistics can be "competent in proving employment discrimination[,]" "they come in infinite variety and, like any other kind of evidence, they may be rebutted. In short, their usefulness depends on all of the surrounding facts and circumstances."). And here, Jacobs offers none. Jacobs has no evidence indicating whether qualified African American applicants applied for and were denied the supervisory positions he claims are occupied by White officials, or what the selection processes for those positions entailed. The naked demographics of the Port of Philadelphia are therefore not, as Jacobs suggests, evidence that similarly situated African American officials seeking promotion were treated poorly. Reliance on racial statistics is particularly inapt in this case, where Jacobs alleges individual disparate treatment related to a specific hiring decision, yet concedes that the officials who made that decision were not the decision-makers with respect to the other positions he references. *See Molthan v. Temple Univ. of Com. Sys. of Higher Educ.*, 778 F.2d 955, 963 (3d Cir. 1985) ("Because the considerations

affecting promotion decisions may differ greatly from one department to another, statistical evidence of a general underrepresentation of" a protected class "adds little to a disparate treatment claim"). The racial make-up of the Port of Philadelphia, absent more, does not permit a reasonable jury to infer that Jacobs was denied the Watch Commander role because of his race.

### IV. CONCLUSION

Because Jacobs fails to present competent evidence from which a jury could reasonably infer that CBP intentionally disfavored him because of his race in selecting a Watch Commander, Defendant's Motion for Summary Judgment shall be granted.

An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.
_____
**WENDY BEETLESTONE, J.**